**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DESHANEE STEWART and SEVARIA
WILLS, *on behalf of themselves, FLSA
Collective Plaintiffs, and the Class,*

               Plaintiff,

    v.

SUMMIT HEALTH MANAGEMENT, LLC,
d/b/a CITYMD and CITY PRACTICE GROUP
OF NEW YORK LLC d/b/a CITYMD,

               Defendants.

Case No. 23-CV-04073-ER

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

**McDERMOTT WILL & EMERY LLP**

Jeremy M. White (admitted *pro hac vice*)
David A. Beach
500 North Capitol Street, N.W.
Washington, DC 20001
Tel: (202) 756-8694

Dated:  September 15, 2023

*Attorneys for Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

LEGAL STANDARD............................................................................................... 3

ARGUMENT .......................................................................................................... 4

    I.      Plaintiffs Have Not Plausibly Alleged an Unpaid Overtime/Wages
Claim ..................................................................................................... 4

          A.      Plaintiffs Do Not Plausibly Allege Specific Instances of
Unpaid Off-The-Clock Work................................................... 4

          B.      Plaintiffs Fail To Identify a Common Policy Resulting in
Off-the-Clock Work ............................................................... 6

    II.     Plaintiffs Have Not PLAUSIBLY Alleged Uncompensated Wages
As A Result of "One Directional Rounding" ....................................... 9

    III.    Plaintiffs Have Not Plausibly Alleged Uncompensated "Short
Breaks".................................................................................................. 11

    IV.    Plaintiffs Do Not Have Standing Under the New York Wage Theft
Prevention Act ..................................................................................... 12

    V.     Plaintiff Stewart Has Not Alleged a Plausible Claim of Disparate
Treatment Based On Race ................................................................... 15

CONCLUSION....................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmed v. Domino's Pizza LLC*,
　2022 WL 2666005 (S.D.N.Y. July 11, 2022) ...........................................................6

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)......................................................................1, 3, 4, 7, 9, 15

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007).............................................................................1, 3, 5, 15

*Beyer v. Michels Corp.*,
　2022 WL 901524 (E.D. Wisc. Mar. 28, 2022) ........................................................8

*Bravo v. Established Burger One, LLC*,
　2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013) ......................................................9, 11

*Bronx Conservatory of Music, Inc. v. Kwoka*,
　2022 WL 18143883 (S.D.N.Y. Oct. 28, 2022) ........................................................5

*Butts v. New York City Dep't of Educ.*,
　2018 WL 4725263 (E.D.N.Y. Sept. 28, 2018) ......................................................17

*Castillo v. Bank of Am. Nat'l Assoc.*,
　2018 WL 1409314 (C.D. Cal. Feb. 1, 2018)...........................................................7

*Colon v. Bank of Am., N.A.*,
　2017 WL 11610299 (D. Ariz. Mar. 8, 2017) ..........................................................8

*Cortec Indus., Inc. v. Sum Holding L.P.*,
　949 F.2d 42 (2d Cir. 1991)..................................................................................8

*DeJesus v. HF Mgmt. Servs., LLC*,
　726 F.3d 85 (2d Cir. 2013)......................................................................4, 5, 12

*Galanis v. Harmonie Club of the City of N.Y.*,
　2014 WL 101670 (S.D.N.Y. Jan. 10, 2014) ...........................................................8

*Garmon v. Bd. of Educ. For Buffalo City Sch. District*,
　2017 WL 7038200 (W.D.N.Y. Nov. 2, 2017) .........................................................6

*Layton v. Percepta, LLC*,
　2018 WL 3758309 (M.D. Fla. July 20, 2018) .........................................................8

*Lettieri v. Anti-Defamation League*,
    2023 WL 5152447 (S.D.N.Y. Aug. 10, 2023) ........................................................................15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................................12

*Lundy v. Catholic Health Sys. Of Long Island, Inc.*,
    711 F.3d 106 (2d Cir. 2013) ........................................................................................4, 6

*McMillian v. MTA Metro-North Railroad*,
    2021 WL 4311318 (S.D.N.Y. Sept. 20, 2021) ........................................................................18

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ........................................................................................15

*Munoz v. Grp. US Mgmt LLC*,
    2023 WL 5390204 (S.D.N.Y. Aug. 22, 2023) ........................................................................14

*Ndongo v. Bank of China Ltd.*,
    2023 WL 2215261 (S.D.N.Y. Feb. 24, 2023) ........................................................................17

*Neor v. Acacia Network, Inc.*,
    2023 WL 1797267 (S.D.N.Y. Feb. 7, 2023) ..............................................................12, 13, 14

*Ogleton v. City of New York*,
    2023 WL 3012027 (S.D.N.Y. Feb. 17, 2023) ........................................................................6, 18

*Oliver v. Rio Acquisition Partners, LLC*,
    2019 WL 801952 (S.D.N.Y. Feb. 21, 2019) ........................................................................7

*Opoku v. Brega*,
    2016 WL 5720807 (S.D.N.Y. Sept. 30, 2016) ........................................................................18

*Pastrana v. Mr. Taco LLC*,
    2022 WL 16857111 (S.D.N.Y. Sept. 23, 2022) ........................................................................13

*Petyan v. N.Y.C. Law Dep't*,
    2015 WL 1855961 (S.D.N.Y. Apr. 23, 2015) ........................................................................16

*Quieju v. La Jugueria Inc.*,
    2023 WL 3073518 (E.D.N.Y. Apr. 25, 2023) ........................................................................13

*Ramirez v. Urion Construction LLC*,
    2023 WL 3570639 (S.D.N.Y. May 19, 2023) ........................................................................13

*Richards v. Dep't of Education of City of New York*,
    2022 WL 329226 (S.D.N.Y. Feb. 2, 2022) ..............................................................15, 16, 17

iv

*Robbins v. XTO Energy, Inc.*,
  2018 WL 5849967 (N.D. Tex. Nov. 7, 2018) ........................................................................8

*Robinson v. Wal-Mart Stores, Inc.*,
  253 F.R.D. 396 (S.D. Miss. 2008) ........................................................................................8

*Rolley-Radford v. Modern Disposal Servs., Inc.*,
  2023 WL 5105418 (W.D.N.Y. Aug. 9, 2023) ......................................................................18

*Shankar v. Ankura Consulting Grp., LLC*,
  2021 WL 3542803 (S.D.N.Y. Aug. 11, 2021) ......................................................................17

*Smalls v. Amazon.com Servs.*,
  LLC, 2022 WL 17491259 (2d Cir. Dec. 8, 2022) ................................................................15

*Spokeo Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................................................12

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ..................................................................................................12, 14

*Vega v. Hempstead Union Free Sch. Dist.*,
  801 F.3d 72 (2d Cir. 2015) .................................................................................................15

*Williams v. Victoria's Secret*,
  2017 WL 384787 (S.D.N.Y. Jan. 27, 2017) ........................................................................17

**Statutes**

29 U.S.C. § 201 *et seq.* ...........................................................................................................10

Fair Labor Standards Act .................................................................................................... *passim*

New York City Human Rights Law ..................................................................................... *passim*

New York Labor Law ......................................................................................................... *passim*

N.Y. Lab. Law § 162 ..............................................................................................................1

N.Y. Lab. Law § 195 ............................................................................................................13

New York State Human Rights Law .................................................................................... *passim*

29 C.F.R. § 785.18 ...............................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................4

## PRELIMINARY STATEMENT

Plaintiffs Deshanee Stewart and Sevaria Wills asked this Court to file a second amended complaint so they could address the pleading deficiencies raised in defendants' pre-motion conference letter.[1]  But they did no such thing and instead used this third opportunity to assert new claims without leave of this Court, which are distinct from their prior allegations.  These two new claims—one-directional rounding and unpaid rest breaks—are equally deficient because they also fail to allege sufficient facts to satisfy the Supreme Court's heightened pleading requirements under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

With each iteration of their complaint, plaintiffs have manufactured a new theory of liability underlying their unpaid wages/overtime claim under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").[2]  For example, plaintiffs' original complaint asserted that Stewart and the putative collective action plaintiffs were not paid overtime wages "due to a policy of timeshaving."  Doc. 1, Compl. ¶¶ 17, 37.  When defendants' June 16, 2023 pre-motion letter pointed out that the Complaint failed to identify any "timeshaving" policy (Doc. 13), plaintiffs responded that a conference was unnecessary because they intended to amend their complaint (Doc. 19), which they were permitted to do.  However, the amended complaint abandoned plaintiffs' timeshaving argument and instead came up with an entirely new

---

[1] During the pre-motion conference, plaintiffs' counsel essentially conceded that plaintiffs' N.Y. Lab. Law § 191 claim was baseless and subsequently withdrew that claim from the second amended complaint.

[2] Plaintiffs' second amended complaint consists of the following individual and class/collective claims under the FLSA and NYLL: (1) unpaid wages and overtime for off-the-clock work performed before and after scheduled shifts, including with regard to restarting a computer; (2) failure to compensate for pre-shift work due to one-directional rounding; (3) unpaid rest breaks of 20 minutes or less; and (4) failure to provide proper wage notices and statements.  In addition, plaintiff Stewart has asserted a race discrimination claim under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

claim concerning an alleged "policy of compelling uncompensated off-the-clock work" which relates to allegedly restarting their computer upon arrival at work.  Doc. 23, Am. Compl. ¶¶ 1-2, 42.  Plaintiffs' complete change of the factual basis for their overtime claims calls into question whether they had a good faith basis to assert the original claims in the first place and further undermines the viability and credibility of their new claims.  It is not surprising that plaintiffs cannot identify even one instance when they allegedly engaged in off-the-clock work while their computer was restarting, were required to be compensated for that time, and were not compensated for that time.

Plaintiffs have also failed to identify a single day when they allegedly started working before a scheduled shift and were not compensated for that time due to a policy of one-directional rounding.  Given the factually-deficient complaint, there is not enough to nudge their claim across the line from conceivable to plausible.

The same is true for their rest break claim in which plaintiffs do not plausibly allege they were entitled to a rest break, let alone that they took a rest break for a specific amount of time and were not compensated for that time.  Additionally, plaintiffs' improper wage notice/statement claim also fails.  Because plaintiffs have not and cannot allege that any purported failure to receive these wage documents caused them any concrete, actual harm, their allegations are insufficient to confer Article III standing.

As for plaintiff Stewart's race discrimination claim, the second amended complaint does nothing to cure the deficiencies raised in defendants' pre-motion letter.  While Stewart makes much to do about scheduling changes and facially-neutral comments, her complaint does not include a single example of racial animus.  Instead of alleging facts to support her conclusory claims of race discrimination, the second amended complaint largely consists of ordinary

tribulations of the workplace, which Stewart claims must have happened because of her race. However, the NYSHRL and NYCHRL require the plaintiff to plausibly allege that defendants' actions were motivated by discrimination, which Stewart has failed to do. Because there is no direct evidence presented and the circumstantial evidence alleged does not come close to satisfying the pleading standard under *Twombly* and *Iqbal*, the Court is left with only Stewart's belief that she experienced discrimination, which is not enough to survive dismissal of her discrimination claims.

Each of plaintiffs' claims—new and old—plead conclusions and not the supporting "factual content" that *Iqbal* and *Twombly* require. As such, dismissal of the second amended complaint is warranted.

## LEGAL STANDARD

To survive a motion to dismiss under *Twombly* and *Iqbal*, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). Accordingly, plaintiffs' "obligation to provide the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545. Rather, plaintiffs must plead facts pertaining to their own case that make a violation "plausible," not just "possible." *Iqbal*, 556 U.S. at 677-79 (2009) (citing *Twombly*, 550 U.S. at 556) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Consequently, the Court

should only accept as true well-pleaded facts, not plaintiffs' legal conclusions. *See id.*  As set

forth below, this Court should grant this motion and dismiss plaintiffs' second amended

complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I.    PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED AN UNPAID OVERTIME/WAGES CLAIM

#### A.    Plaintiffs Do Not Plausibly Allege Specific Instances of Unpaid Off-The-Clock Work

Plaintiffs fail to plausibly allege individual claims for unpaid overtime wages or off the

clock work.  In support of their claims, plaintiffs allege they were both *scheduled* to work over

40 hours per week at some point during their employment (Doc. 29, Second Am. Compl.

("SAC") ¶¶ 29, 31-32, 36), that Stewart actually worked overtime three times during her

employment (*id.* ¶ 51), and that "Defendants knowingly and willfully operated their business

with a policy of not compensating Plaintiffs for all hours worked, in violation of the FLSA and

NYLL" because they were required to perform "approximately 15 minutes [of off the clock

work] each morning" and "10-15 minutes after their shift (on average) twice weekly." *Id.* ¶¶ 44,

49, 60.  Such conclusory allegations devoid of any supporting facts do not meet plaintiffs'

pleading burden.

Determining whether an overtime claim is plausibly pled is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Lundy v.

Catholic Health Sys. Of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting *Iqbal*, 556

U.S. at 679).  While plaintiffs are not required to "plead their hours with mathematical

precision," they must "do more than repeat the language of the statute." *DeJesus v. HF Mgmt.

Servs., LLC*, 726 F.3d 85, 89-90 (2d Cir. 2013).  As a result, plaintiffs must "provide some

factual context that will 'nudge' [their] claim 'from conceivable to plausible,'" and cannot rely on vague allegations that he or she "'regularly worked' more than forty hours a week and [was] not properly compensated." *Id.*  If a plaintiff "lacks access to the defendant's records, he is nonetheless expected to draw on his memory and experience to provide a complaint with sufficiently developed factual allegations." *Bronx Conservatory of Music, Inc. v. Kwoka*, 2022 WL 18143883, at *3 (S.D.N.Y. Oct. 28, 2022) (citing *DeJesus*, 726 F.3d at 86, 90) (internal quotation marks omitted).

Here, plaintiffs have their payroll records (which were produced in connection with the Court-mandated mediation that occurred prior to the second amended complaint), and they still fail to sufficiently plead allegations in support of their claims for unpaid regular and overtime wages.  In fact, Wills does not identify a single week she actually worked overtime and did not receive proper compensation.  Stewart now alleges that waiting for her computer to load and being "distracted" by "impatient clients" during her morning shifts "resulted in unpaid overtime in violation of the FLSA for the weeks ending on October 9, 2021, December 18, 2021, [and] February 19, 2022."  SAC ¶ 51.  However, Stewart's new allegation still fails to satisfy the pleading requirements of *Iqbal* and *Twombly* because she does not allege how many hours of overtime she worked during those three weeks, whether she worked a morning shift each day during the identified weeks (*i.e.*, how frequently she allegedly worked off the clock for "approximately" 15 minutes when arriving to work), and whether she worked overtime during any other time.  *See*, *e.g.*, *Bronx Conservatory of Music, Inc*, 2022 WL 18143883, at *4 (dismissing plaintiff's FLSA claim where he "alleged that he worked more than 40 hours during [] seven specified weeks" without "offer[ing] [any] information as to what he was actually paid for the work he performed during the challenged weeks, and no hint as to what, in his view, he

should have been paid"); *Ogleton v. City of New York*, 2023 WL 3012027, at *4 (S.D.N.Y. Feb. 17, 2023) (dismissing allegations that plaintiff "would work an average of 'one (1) unpaid hour per day, or five (5) unpaid hours per week, including overtime hours'" because they failed to adequately "specif[y] number of hours he worked in excess in a given week"); *Ahmed v. Domino's Pizza LLC*, 2022 WL 2666005, at *6 (S.D.N.Y. July 11, 2022) (concluding that plaintiff's allegations that he "was regularly required to perform work in the excess of 40 hours per week" and "regularly required to perform work for Defendants without receiving overtime" fails to state a cognizable claim under *Lundy* and its progeny); *Garmon v. Bd. of Educ. For Buffalo City Sch. District*, 2017 WL 7038200, at *2 (W.D.N.Y. Nov. 2, 2017) (a complaint only containing "generalities about plaintiffs' work schedules" including that the plaintiff "typically" worked 15 minutes before or after his or her shift "do not pass muster under the Second Circuit Court of Appeals' plausibility standard") (citing *Lundy*, 711 F.3d at 115).

At best, plaintiffs' amended allegations "supply nothing but low-octane fuel for speculation, not the plausible claim that is required." *Lundy*, 711 F.3d at 115. For these reasons, plaintiffs' individual unpaid wages/overtime claims based on off-the-clock work should be dismissed.

### B.    Plaintiffs Fail To Identify a Common Policy Resulting in Off-the-Clock Work

To proceed with their class and collective action claims, plaintiffs must plausibly allege a common policy resulting in off-the-clock work that is applicable to *every* patient care representative ("PCR") employed by defendants in the state of New York over the past six years. Plaintiffs fail to meet this pleading requirement yet again. *See*, *e.g.*, *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 631 (S.D.N.Y. 2007) (dismissing plaintiff's FLSA collective claims when "[t]here [wa]s no reference made to a policy to which other employees are subject, nor to any company policy at all"). Indeed, the current complaint alleges, in conclusory fashion, that

defendants "had a policy and practice that failed to pay wages to [PCRs] for all hours they worked off the clock both before and after their scheduled shifts." SAC ¶ 81. But they do not (and cannot) identify a specific policy to support this claim.

Rather, plaintiffs allege, without any factual support, that every single PCR employed at a CityMD location in New York over the past six years worked off the clock each morning for "approximately" 15 minutes while (1) waiting to clock-in while their urgent care center's computer—housing CityMD's time-keeping system—loaded for "no less than five minutes, and frequently longer"; and/or (2) after "becom[ing] distracted by impatient clients" at the start of their morning shift. *Id.* ¶¶ 41-43. But logging into a computer and "becom[ing] distracted" are not company policies. Instead, they are issues Stewart allegedly experienced *three times during her employment* (*Id.* ¶ 51), and cannot be extrapolated to the *hundreds* of other PCRs employed by defendants over the past six years in numerous locations, during various shifts, with different managers all over the state of New York.[3] Plaintiffs' "naked assertion[s]" of a company-wide policy "devoid of 'further factual enhancement'" are insufficient to state a claim. *Iqbal,* 556 U.S. at 678; *see also Oliver v. Rio Acquisition Partners, LLC*, 2019 WL 801952, at *2 (S.D.N.Y. Feb. 21, 2019) (recognizing that while "Rule 8 does not require detailed factual allegations, [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to allege a *plausible*—not just possible—claim of under-compensation) (internal citations and quotation marks omitted); *Castillo v. Bank of Am. Nat'l Assoc.*, 2018 WL 1409314, at *10 (C.D. Cal. Feb. 1, 2018) (dismissing plaintiff's statewide FLSA class allegations where "Plaintiff [did] not plead that BOA has a uniform policy throughout the state with respect to how pre-shift activities are

---

[3] Plaintiffs' allegations necessitate fact-specific, individualized inquiries, including whether all PCRs worked morning shifts, whether every CityMD workstation has the same loading time issue, and whether every CityMD urgent care center experiences lines of "impatient clients" that "distract" PCRs at the start of their scheduled shift.

carried out" and "Plaintiff's main allegation—that [] workers are governed by a common employee handbook—does not justify putting BOA through the expense of class discovery").[4]

    If anything, plaintiffs' allegations are powerful admissions that there is no ongoing, systematic or class-type violation of the FLSA or NYLL by defendants.  *See*, *e.g.*, *Layton v. Percepta, LLC*, 2018 WL 3758309, at *2 n.2 (M.D. Fla. July 20, 2018) ("Plaintiff's allegation that employees were told that they 'needed to do whatever was needed to get the job done including working off-the-clock' is too vague, standing alone, to establish a common policy, plan, or scheme to violate the FLSA.").  In fact, defendants' timekeeping policy—which the Court should consider because plaintiffs' second amended complaint repeatedly refers to, and relies upon, defendants' employee handbook which includes this policy[5]—*prohibits* off-the-clock work, and requires all employees to accurately record their work time and immediately report any recording errors to a supervisor, thereby further undermining plaintiffs' claims.

---

[4]  *See also Colon v. Bank of Am., N.A.*, 2017 WL 11610299, at *2 (D. Ariz. Mar. 8, 2017) (dismissing class allegations where plaintiff alleged that the defendant required "telephone-dedicated employees" to perform pre-shift activities without pay at multiple facilities, but failed to allege any facts specific to any facility but his own); *Robbins v. XTO Energy, Inc.*, 2018 WL 5849967, at *5 (N.D. Tex. Nov. 7, 2018) (dismissing plaintiff's class allegations because his "Third Amended Complaint is devoid of factual allegations from which the Court can conclude that the putative class members were subject to a common policy or plan"); *Beyer v. Michels Corp.,* 2022 WL 901524, at *8-9 (E.D. Wisc. Mar. 28, 2022) (striking plaintiff's FLSA class allegations where she "failed to adequately plead collective or class claims with respect to pre-shift overtime or bonuses. She has not alleged that there was a uniform policy (independent of what a single supervisor said or did) that applied to logging in early or to bonuses, she has not alleged that other employees weren't properly compensated or that the bonus was anything other than a year-end gift"); *Robinson v. Wal-Mart Stores, Inc.,* 253 F.R.D. 396, 401 (S.D. Miss. 2008) (dismissing class allegations where "the amount of damages each class member could recover would depend on the amount of time he or she worked off-the-clock and/or the number of rest/meal breaks he or she was denied while employed by Wal–Mart. As such, the Court finds that the amount of recoverable damages cannot be 'calculated by objective standards' but, instead, requires 'individualized proof', which involves 'substantial legal and factual issues'").

[5]  In deciding a motion to dismiss, the Court may consider "any statements or documents incorporated in [the complaint] by reference" and "documents plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47, 48 (2d Cir. 1991); *see also Galanis v. Harmonie Club of the City of N.Y.*, 2014 WL 101670, at *8 n.6 (S.D.N.Y. Jan. 10, 2014) (noting that although the "plaintiff failed to attach the handbook to the Complaint . . . the Court may still consider the handbook because the Complaint relies heavily upon its terms and effect, which renders the handbook integral to the Complaint") (internal quotations omitted).

Because plaintiffs' class and collective claims for unpaid overtime/wages are also

deficient, the Court should dismiss them or in the alternative strike these class allegations from

the second amended complaint.  *See* Fed. R. Civ. Pr. 12(f) (explaining that the district court may

on its own strike from a pleading any redundant, immaterial, or impertinent matter).

## II.    PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED UNCOMPENSATED WAGES AS A RESULT OF "ONE DIRECTIONAL ROUNDING"

Plaintiffs' second amended complaint also includes a claim for unpaid regular and

overtime wages based on a purported policy of "one directional rounding."  SAC ¶¶ 20, 23.

Specifically, plaintiffs allege that "[w]hen Plaintiff WILLS and Subclass members clocked-in

prior to their scheduled start time prior to May 2019, their time was rounded up to their

scheduled start, but when they clocked in after their scheduled start time, they were compensated

based on their clock-in."  *Id*. ¶ 54.[6]  As explained below, this rounding claim should be

dismissed.

First, plaintiffs assert this claim for the first time in their second amended complaint

based on entirely new allegations, without seeking leave from this Court.  Because plaintiffs'

counsel did not raise this new claim during the pre-motion conference or otherwise seek leave, it

should be dismissed.  *See Bravo v. Established Burger One, LLC*, 2013 WL 5549495, at *5

(S.D.N.Y. Oct. 8, 2013) ("District courts in this Circuit have routinely dismissed claims in

amended complaints where the court granted leave to amend for a limited purpose and the

plaintiff filed an amended complaint exceeding the scope of the permission granted.").

Second, even if the Court had permitted this amendment, plaintiffs fail to allege a single

instance of "one directional rounding" or even claim that defendants failed to compensate Wills

---

[6]  Plaintiff Stewart does not bring this rounding claim because she did not begin working for defendants until after May 2019.  *Id*. ¶ 29.

or any other PCR for work performed before a scheduled shift. Wills does not allege she ever

clocked in before her scheduled shift *and* performed work that was not compensated due to an

alleged rounding policy. In other words, this claim is not even "possible," let alone plausible.

*Iqbal,* 556 U.S. at 678 (recognizing that "naked assertions devoid of further factual

enhancement" fail to state a plausible entitlement to relief) (internal citations and quotation

marks omitted). Moreover, plaintiffs cite a portion of CityMD's time keeping policy (SAC ¶

39), but conveniently omit the following sections from the policy, which establish that PCRs are

paid for all time worked, may not work off the clock, and must immediately report any time

keeping errors to management.

> Accurately recording time worked is the responsibility of every non-exempt
> employee. Federal and state laws, regulations and insurance plans require
> CITYMD to keep an accurate record of time worked in order to calculate
> employee pay, benefits, charges and/or pay for services rendered. Time worked
> is all the time actually spent on the job performing assigned duties.
>
> Non-exempt employees must accurately record the time they begin and end
> work. They should also record the beginning and ending time of any meal
> period, split shift, or departure from work for personal reasons. Employees may
> clock in no more than 7 minutes before their scheduled starting time (payment
> begins at scheduled starting time unless approved by manager) and must clock
> out at the completion of their working shift (when duties are completed). ***Non-
> exempt employees may never work off the clock and therefore may not begin
> work until start time***.
>
> Since employee time records are vital for payroll purposes, employees must
> inform management if they fail or otherwise forget to record their time in or out
> before or after any working time. Failure to properly record time or otherwise
> violating this policy (such as by altering, falsifying, tampering with time
> records, or recording time on another employee's time record) may result in
> disciplinary action, up to and including termination of employment.

Finally, Wills does not allege she routinely violated CityMD's policies by clocking in

before her scheduled shift and performing work without her manager's approval. In fact, the

entire basis of plaintiffs' off-the-clock claim (*see supra* Section I.A) is that they *were prevented*

*from clocking in before starting work* due to "slow" computers and "distract[ing]…clients."

SAC ¶¶ 41, 43.  Wills thus cannot possibly be working on the clock and off the clock at the same time.  Because plaintiffs fail to allege that Wills was not compensated for on-the-clock work performed before her shift began, this claim should be dismissed.

### III.    PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED UNCOMPENSATED "SHORT BREAKS"

Under the FLSA and NYLL, an employer is not required to provide rest breaks of short duration to its employees.  *See* 29 U.S.C. § 201 *et seq.*; N.Y. Lab. Law § 162.  However, if an employer chooses to provide a rest break, the employee must be compensated for it.  29 C.F.R. § 785.18.

Plaintiffs' second amended complaint falls woefully short of stating a claim for uncompensated short breaks.[7]  In fact, plaintiffs only assert the following conclusory allegations in support of their claim:

- "When employees would clock-out for short breaks of less than 20 minutes, Defendants failed to compensate this time."

- "The failure to pay for these 20-minute short breaks resulted in underpayments to Plaintiffs, FLSA Collective Plaintiffs, and Class members, which will be determinable from the records of Defendants."

- For Plaintiff STEWART this failure to compensate 20-minute breaks led to an underpayment of overtime for the week of October 9, 2021, as Plaintiff STEWARTS records show a failure to compensate for a short rest break lasting less than 20 minutes during a week she is recorded as working over 42 hours."

SAC ¶¶ 52-53.

These three allegations fail to state a claim.  That is because, like plaintiffs' other claims, plaintiffs fail to provide any *factual* allegations showing that Stewart or any other PCR was not compensated for a break lasting under 20 minutes.  Instead, plaintiffs' allegations track the

---

[7]  Like the rounding claim, plaintiffs' claim for uncompensated rest breaks exceeds the permissible scope of the Court's leave to amend.  *Bravo*, 2013 WL 5549495, at *5.

statutory language of the FLSA and NYLL—*i.e.*, Stewart took a short break of unknown

duration on some unknown date and was not paid for the time that she took the break.  Absent

from the second amended complaint are any allegations concerning the duration of a purported

break or the compensation she is owed for allegedly taking it.  These "naked allegations" fail to

plead sufficient facts to nudge Stewart's claim from possible to plausible.  *DeJesus*, 726 F.3d at

87, 90 (concluding that plaintiff's "all-purpose pleading template" alleging that he worked

overtime "in some or all weeks" fails to plausibly allege the approximation of off-the-clock

hours).

## IV.     PLAINTIFFS DO NOT HAVE STANDING UNDER THE NEW YORK WAGE THEFT PREVENTION ACT

Plaintiffs have the burden to establish standing.  *See Spokeo Inc. v. Robins*, 578 U.S. 330,

338-39 (2016).  To establish standing, plaintiffs must have suffered an injury in fact, *i.e.*, the

invasion of a legally-protected interest that is both concrete and particularized, and actual and

imminent, not conjectural or hypothetical.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992).  "A plaintiff cannot solely rely on the fact that the defendant committed a statutory

violation because an 'injury in law' does not amount to an 'injury in fact' for purposes of Article

III standing."  *Neor v. Acacia Network, Inc.*, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023)

(citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021)).  Because plaintiffs cannot

plausibly allege they suffered an injury in fact by purportedly not receiving wage notices and

statements, their New York Wage Theft Prevention Act ("WTPA") claim should be dismissed.[8]

---

[8]  In prior complaints plaintiffs did not include their wage statement claim as a separate cause of action or in the request for relief.  Thus, it was not entirely clear to defendants that plaintiffs were pursuing this claim until the mediation on August 10, 2023, which took place *after* defendants filed their pre-motion conference letter (Doc. 25, Aug. 3, 2023).

Plaintiffs' entire wage notice and statement claim rests on three allegations: (1) that defendants did not provide wage notices or "proper" wage statements (SAC ¶ 56),[9] (2) that these failures allowed "Defendants [] to hide their wrongdoing from employees," and (3) has "caused Plaintiffs to struggle to timely pay bills." *Id*. ¶¶ 58-59. Nowhere do plaintiffs allege they were unable to pay their bills or were injured in any way because they did not receive these wage documents (nor could they). Their claim is nothing more than "speculation and conjecture" which is why courts have routinely rejected these allegations in concluding that they are insufficient to establish standing. *See Ramirez v. Urion Construction LLC*, 2023 WL 3570639, at *8 (S.D.N.Y. May 19, 2023) ("Courts throughout the Second Circuit have since found no standing in cases, such as the instant case, where Plaintiffs have not established any injury traceable to violation of the wage notice and statement requirements") (collecting cases); *Quieju v. La Jugueria Inc.*, 2023 WL 3073518, at *1-2 (E.D.N.Y. Apr. 25, 2023) ("Several decisions in this district, including one from this Court, have held that the statutory damage remedies in NYLL § 195(1) and (3) do not support standing in federal court") (collecting cases); *Pastrana v. Mr. Taco LLC*, 2022 WL 16857111, at *7 (S.D.N.Y. Sept. 23, 2022) (holding that plaintiff lacked standing to bring wage notice violations where they failed to show "how their lack of notice resulted in an injury greater than Defendants' minimum wage, overtime, and spread-of-hours wage violations").

Notably, this Court recently dismissed similar allegations brought by the same attorneys representing the plaintiffs here. In *Neor v. Acacia Network, Inc.*, plaintiffs similarly alleged that

---

[9] Plaintiffs mistakenly claim the WTPA requires employers to provide employees a wage notice every year. SAC ¶ 56. The New York State Legislature removed that requirement eight years ago during its 2015 session. *See* N.Y. Lab. Law § 195(1)(a) and (2) ("Every employer shall . . . provide his or her employees . . . at the time of hiring, a notice" and "notify his or her employees in writing of any changes to the information.").

defendants failed to furnish proper wage notices and statements, purportedly facilitating defendants' wrongdoing. 2023 WL 1797267, at *4. This Court concluded this was not a plausible injury because "Plaintiffs admit that [defendants] furnished wage statements that would show a lower number of hours recorded than Plaintiffs actually worked . . . [and] [t]he inaccuracies in the wage statements would immediately alert the Plaintiffs to the fact that they were not being properly compensated." *Id.* As a result, this Court properly concluded that the allegations in *Neor*—which are similar to the allegations here—fell short of plausibly alleging a "tangible injury" and dismissed plaintiffs' WTPA claims. *Id.*

Since this Court's ruling in *Neor*, plaintiffs, who are represented by the same attorneys, have attempted to buttress their WTPA claims by alleging that they "struggled," but apparently were able, to timely pay their bills. SAC ¶¶ 58-59. This attempt to avoid dismissal has failed as well. On August 22, 2023, Judge Vyskocil rejected *this exact allegation* in *Munoz v. Grp. US Mgmt LLC*, 2023 WL 5390204, at *6 (S.D.N.Y. Aug. 22, 2023). In *Munoz*, plaintiff similarly alleged, "without *any* accompanying factual support," that defendants had "a policy of not providing proper wage statements" or "proper wage notices" which "deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation," causing them to "struggle to timely pay bills." *Id.* The court explained that these allegations—which do not plead an injury greater than plaintiff's overtime claims—failed to "plausibly allege" the type of concrete injury required by the Supreme Court's decision in *TransUnion*. *Id.* As a result, the *Munoz* court concluded that "[b]ecause Plaintiff has not alleged any injury stemming from Defendants' failure to provide wage notices or statements, he does not have standing to assert these claims." *Id.* The same result must follow here.

14

## V.    PLAINTIFF STEWART HAS NOT ALLEGED A PLAUSIBLE CLAIM OF DISPARATE TREATMENT BASED ON RACE

Plaintiff Stewart also brings individual claims of disparate treatment under the NYSHRL and NYCHRL.  In support of her race discrimination claim, Stewart alleges: (1) that her manager "routinely" changed her schedule without ample notice during the last three months of her employment; (2) that her manager characterized her opposition to these alleged changes as "uncooperative" and "passive aggressive"; and (3) that she was terminated "due to a lack of professionalism."  SAC ¶¶ 66, 68, 75.  But she fails to plausibly allege that these challenged actions were done at least in part *because of* discrimination.

To survive a motion to dismiss under *Twombly* and *Iqbal*, a complaint "must at a minimum assert *nonconclusory factual matter* sufficient to nudge its claims across the line from conceivable to plausible to proceed."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89 (2d Cir. 2015) (*quoting Iqbal*, 556 U.S. at 680) (internal quotation marks removed) (emphasis added).[10]  The "nonconclusory factual matter" required by *Iqbal* for claims of discrimination under the NYSHRL and the NYCHRL must be specific enough to make a plausible showing that the plaintiff was treated "less well" than other employees *because of* a discriminatory intent. *Vega*, 801 F.3d at 89; *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).  Absent direct evidence of discrimination, a plaintiff like Stewart must identify employees of a different race who were similarly situated in all material respects and who were treated more favorably than the plaintiff to plausibly allege a discriminatory motive.  *Richards v. Dep't of Education of City of New York*, 2022 WL 329226, at *10 (S.D.N.Y. Feb. 2, 2022)

---

[10]  *Twombly* and *Iqbal* apply to discrimination claims under the NYSHRL and NYCHRL.  *See Smalls v. Amazon.com Servs.*, LLC, 2022 WL 17491259, at *1 (2d Cir. Dec. 8, 2022); *Lettieri v. Anti-Defamation League*, 2023 WL 5152447, at *11 (S.D.N.Y. Aug. 10, 2023).

(dismissing disparate treatment claims under Title VII, NYSHRL and the NYCHRL because plaintiff failed to allege "racially or religiously derogatory terms or . . . invidious comments about others of Plaintiff's race or religion" and the complaint "falls short because it either does not identify similarly situated employees or, for employees it does identify, the pleading does not provide facts to support that they are similarly situated in all material respects").

Stewart's race discrimination claim is based on the following three conclusory allegations:

- Her manager did not routinely change the schedules of non-black employees without sufficient notice.  SAC ¶ 64.

- Characterizing her opposition to scheduling requests as "uncooperative" and "passive-aggressive" is pejorative and plays into stereotypes about black women. *Id.* ¶¶ 71-73.

- Stewart and the only other black individual employed at Stewart's primary work location were terminated.  *Id.* ¶¶ 63, 67.

These allegations fail to state a claim for the following reasons:

1.      Stewart does not identify *any* similarly situated employees outside her protected group who received preferable scheduling, let alone one who was similarly situated in all material respects.[11]  This kind of reliable comparator evidence is required at the pleading stage when there is no direct evidence of discrimination.  *Richards*, 2022 WL 329226, at *10 ("A plaintiff attempting to show that the employer treated her less favorably than a similarly situated employee outside her protected group must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.") (internal citations and

---

[11]  In addition, Stewart's allegation regarding last-second scheduling is not, by itself, actionable.  *See, e.g.*, *Petyan v. N.Y.C. Law Dep't*, 2015 WL 1855961, at *10 (S.D.N.Y. Apr. 23, 2015) *adopted by* 2015 WL 4104841 (S.D.N.Y. July 2, 2015) ("Where the change in schedule does not occasion a reduction in wages or job responsibilities, unfavorable schedules are a 'mere inconvenience' and not an adverse employment action.").

quotation marks omitted); *Butts v. New York City Dep't of Educ.*, 2018 WL 4725263, at *12 (E.D.N.Y. Sept. 28, 2018) (dismissing plaintiff's race discrimination claim under the NYCHRL when she failed to allege plausible facts establishing "a causal connection between her race and any alleged [negative] treatment"). And while Paragraph 64 alleges that "the location's non-Black employees" did not face last-second schedule changes, the second amended complaint fails to provide *any* information about these unnamed colleagues, much less make a plausible showing that they were similarly situated in every material respect in order to warrant an inference of discrimination. *Richards*, 2022 WL 329226, at *20 (bare allegation that employer treated plaintiff differently than colleagues was insufficient under the NYCHRL to establish inference of discriminatory motive).

      2.     Stewart also provides no allegations justifying an inference that describing her conduct as "uncooperative" or "passive aggressive" was connected to her race. SAC ¶¶ 71-74. These are facially-neutral comments, and Stewart does not allege her manager reserved them for black employees only. Instead, she alleges the statements were made after she complained about scheduling decisions, and therefore, they are likely related to stereotypes regarding black women. Courts in this District reject these types of claims. *See, e.g., Ndongo v. Bank of China Ltd.*, 2023 WL 2215261, at *6 (S.D.N.Y. Feb. 24, 2023) (finding that a supervisor's description of plaintiff as "abnormal," "rude," "too assertive," and "incompetent" in response to her workplace complaints were "facially neutral comments," not "racist code word[s]," and did not plausibly raise an inference of discrimination); *Williams v. Victoria's Secret*, 2017 WL 384787, at *8 (S.D.N.Y. Jan. 27, 2017) (dismissing plaintiff's claims of disparate treatment where he "does not allege the use of any ethnically degrading language or invidious comments . . . Nor does [he] provide any allegations that would justify an inference that certain facially neutral

comments . . . were actually related to [his] protected characteristics") (citing *Opoku v. Brega*, 2016 WL 5720807, at *8 (S.D.N.Y. Sept. 30, 2016)).

3.      Finally, Stewart concedes that her termination was due to "lack of professionalism," not her race.  SAC ¶ 68.  She tries to overcome this by also alleging that the only other black employee at her primary work location was terminated at an earlier time, for an unpled reason.  *Id*. ¶ 67.  But she does not allege how any other employee was treated, similarly situated or not.  Instead, she focuses on ordinary tribulations of the workplace, which she claims must have happened because she is black.  This is not sufficient to "nudge [her] claims across the line from conceivable to plausible to proceed."  *McMillian v. MTA Metro-North Railroad*, 2021 WL 4311318, at *5 (S.D.N.Y. Sept. 20, 2021) (dismissing claim of discriminatory termination where "Plaintiff appear[ed] [to] rely on the fallacy that because she belongs to a protected class, it is plausible that anything negative that happened to her at work was because of her membership in that class") (internal citation omitted); *Shankar v. Ankura Consulting Grp., LLC*, 2021 WL 3542803, at *6 (S.D.N.Y. Aug. 11, 2021) (dismissing plaintiff's claims under the NYSHRL and NYCHRL because her "Complaint relies on conclusory statements that she was treated less well than Harvey and other Caucasian employees, but she has not met her burden of showing that [her termination] was "caused by a racially discriminatory motive"); *Rolley-Radford v. Modern Disposal Servs., Inc.*, 2023 WL 5105418, at *5 (W.D.N.Y. Aug. 9, 2023) (dismissing plaintiff's claim for discriminatory termination where she "provide[d] no information about the 'similarly situated white employees' that she refers to in passing…and she offers no other factual allegations that would establish an inference of discrimination"); *Ogleton*, 2023 WL 3012027, at *5 ("Ultimately, Plaintiff's discrimination claims boil down to the recitation that he is: (1) Black; (2) suffered adverse employment actions; (3) and must have

suffered those adverse employment actions because he is Black. This is not enough to state a claim of discrimination under either the NYSHRL or the NYCHRL").

In short, Stewart does not plausibly allege a claim under the NYSHRL and NYCHRL because she does not sufficiently allege comparators from which differential treatment can be deduced or present factual allegations that give rise to an inference that she was treated differently and worse because of her race.

## **CONCLUSION**

For all the foregoing reasons, the Court should dismiss all of plaintiffs' claims *with prejudice*, given that this complaint is their third opportunity to properly assert these claims and they have failed to cure any of the deficiencies outlined in detail in defendants' pre-motion conference letters and during the parties' meet-and-confer discussion prior to the filing of this motion.

Dated:   September 15, 2023                    Respectfully submitted,

                                                                McDERMOTT WILL & EMERY LLP

                                                                By: /s/ Jeremy M. White
                                                                Jeremy M. White (admitted *pro hac vice*)
                                                                David A. Beach
                                                                500 North Capitol Street, N.W.
                                                                Washington, DC 20001
                                                                Tel: (202) 756-8694

                                                                *Attorneys for Defendants*