**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DESHANEE STEWART and SEVARIA WILLS, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>SUMMIT HEALTH MANAGEMENT, LLC, d/b/a CITYMD and CITY PRACTICE GROUP OF NEW YORK LLC d/b/a CITYMD,<br><br>Defendants. | Case No. 23-CV-04073-ER<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

**McDERMOTT WILL & EMERY LLP**

Jeremy M. White (admitted *pro hac vice*)
David A. Beach
500 North Capitol Street, N.W.
Washington, DC 20001
Tel: (202) 756-8694

Dated: October 13, 2023

*Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

    I.    THERE IS NO PLAUSIBLE CLAIM FOR UNPAID OVERTIME/WAGES DUE TO OFF-THE-CLOCK WORK ................................................................................... 2

        A.    Plaintiffs Do Not Identify a Single Week They Worked Overtime and Were Not Paid for That Work .................................................................... 2

        B.    Plaintiffs Concede They Cannot Identify a Common Policy to Support Their Class and Collective Off-the-Clock Claims ...................................... 3

    II.    THERE IS NO PLAUSIBLE CLAIM FOR UNPAID OVERTIME/WAGES DUE TO "ONE-DIRECTIONAL" ROUNDING ............................................................... 4

    III.    THERE IS NO PLAUSIBLE CLAIM FOR UNCOMPENSATED "SHORT BREAKS" ................................................................................................................ 6

    IV.    THERE IS NO PLAUSIBLE CLAIM UNDER THE NEW YORK WAGE THEFT PREVENTION ACT ................................................................................... 6

    V.    THERE IS NO PLAUSIBLE CLAIM OF DISCRIMINATION BASED ON RACE ........................................................................................................................... 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Arthur v. Murphy Co.*,
  2013 WL 12314684 (D. Or. Dec. 20 2013) ................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................1, 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................1, 6

*Beyer v. Michels Corp.*,
  2022 WL 901524 (E.D. Wisc. Mar. 28, 2022) ..............................................................4

*Cartagena v. Sixth Ave. W. Assocs. LLC*,
  2023 WL 6318170 (S.D.N.Y. Sept. 28, 2023) ..............................................................8

*Creal v. Group O, Inc.*
  2016 WL 3181579 (N.D. Ill. June 8, 2016) ..................................................................5

*Echevarria v. ABC Corp.*,
  2023 WL 5880417 (E.D.N.Y. Sept. 11, 2023) ..............................................................8

*Esquivel v. Lima Rest. Corp.*,
  2023 WL 6338666 (E.D.N.Y. Sept. 29, 2023) ..............................................................8

*Gordon v. Kaleida Health*,
  299 F.R.D. 380 (W.D.N.Y. 2014) ..................................................................................5

*Gregory v. Stewart's Shops Corp.*,
  2015 WL 893058 (N.D.N.Y. Mar. 2, 2015) ...................................................................2

*Jackson v. ProAmpac LLC*,
  2023 WL 6215324 (S.D.N.Y. Sept. 25, 2023) ..............................................................8

*Jones-Cruz v. Rivera*,
  2021 WL 965036 (S.D.N.Y. March 14, 2021) ..............................................................9

*Lipstein v. 20x Hospitality*,
  2023 WL 6124048 (S.D.N.Y. Sept. 19, 2023) ..............................................................7

*Lundy v. Catholic Health Sys. Of Long Island, Inc.*,
  711 F.3d 106 (2d Cir. 2013) ....................................................................................2, 3

*Marvici v. Roche Facilities Maint. LLC*,
   2023 WL 5810500 (S.D.N.Y. Sept. 8, 2023)......................................................................8, 9

*Mateer v. Peloton Interactive, Inc.* ...................................................................................................7
   2022 WL 2751871 (S.D.N.Y. July 14, 2022)

*Metcalf v. Transperfect Translations Int'l, Inc.*
   2022 WL 19300779 (S.D.N.Y. Nov. 15, 2022)........................................................................7

*Munoz v. Grp. US Mgmt. LLC*,
   2023 WL 5390204 (S.D.N.Y. Aug. 22, 2023)...........................................................................8

*Ndongo v. Bank of China Ltd*.
   2023 WL 2215261 (S.D.N.Y. Feb. 24, 2023).........................................................................10

*Neor v. Acacia Network, Inc.*,
   2023 WL 1797267 (S.D.N.Y. Feb. 7, 2023).............................................................................8

*Perez v. Wells Fargo and Co.*,
   2015 WL 1887354 (N.D. Cal. Apr. 24, 2015)..........................................................................6

*Petyan v. N.Y.C. Law Dep't*,
   2015 WL 1855961 (S.D.N.Y. Apr. 23, 2015)...........................................................................9

*Rahman v. Smith & Wollensky Rest. Grp., Inc.*,
   2008 WL 161230 (S.D.N.Y. Jan. 16, 2008) .............................................................................3

*Shi v. TL & CG Inc.*,
   2023 WL 5827598 (S.D.N.Y. Sept. 8, 2023)............................................................................7

*Sokolovsky v. Silver Lake Specialized Care Center*,
   2023 WL 5977298 (E.D.N.Y. Sept. 14, 2023) .........................................................................8

*Thompson v. Elev8 Center N.Y., LLC*,
   2023 WL 4556045 (S.D.N.Y. July 17, 2023) ..........................................................................7

*Vasquez v. Victor's Café 52nd Street, Inc.*,
   2019 WL 4688698 (S.D.N.Y. Sept. 26, 2019)..........................................................................5

*Zhong v. August August Corp.*,
   498 F. Supp. 2d 625 (S.D.N.Y. 2007)......................................................................................4

**Statutes**

Fair Labor Standards Act ...............................................................................................3, 4, 5, 6

New York Wage Theft Prevention Act...............................................................................6, 7, 8, 9

iii

**PRELIMINARY STATEMENT**

Despite two pre-motion letters, several meet and confers, and multiple amendments to the complaint, Plaintiffs' opposition only further confirms that they cannot satisfy the Supreme Court's pleading requirements under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Indeed, when Plaintiffs filed their original complaint, it included boilerplate, copy-and-paste allegations reminiscent of many other cases filed by their attorneys. Defendants promptly pointed out the deficiencies with their complaint, but instead of amending it to include nonconclusory factual matter about the existing claims, Plaintiffs pursued a strategy of claim-shopping by adding and removing claims and legal theories with the hope that something would stick. Most recently, they added two new claims without leave of this Court—one-directional rounding and unpaid rest breaks—when their amendments were supposed to address the deficiencies raised in Defendants' pre-motion letter, which they failed to do. These recent amendments are procedurally improper and do nothing to avoid dismissal because they leave the deficient allegations intact.

Faced with the shortcomings in their second amended complaint, in their opposition, Plaintiffs try to buttress their claims by expansively interpreting the allegations actually pled, obscuring facts in their possession, and in some cases, simply manufacturing new allegations that do not exist in their complaint. For example, Plaintiffs' overtime claims make reference to, but do not attach, payroll records received during the Court-mandated mediation process; the payroll records undermine key aspects of their claims. Similarly, Plaintiffs oppose dismissal of their rounding claim by referring to purported passages in a 2017 employee handbook, but those passages do not exist which is why they do not attach the handbook they admittedly possess. Plaintiffs have also played fast and loose with the facts. While Defendants' counsel during a recent meet and confer tried to convince Plaintiffs' counsel to remove blatantly false allegations

from the complaint—including that Plaintiff Stewart "was one of only two Black employees" who were both terminated by the same supervisor (SAC ¶¶ 63, 67)—they failed to do so. Finally, Plaintiffs concede that they cannot identify a common policy or practice which resulted in off-the-clock work and which applies to all of Defendants' New York locations, thereby proving fatal to their class and collective claims.

Plaintiffs cannot rebut the clear authority cited in Defendants' motion which establishes that their vague and speculative allegations fail to plead any plausible cause of action. Plaintiffs' second amended complaint should be dismissed with prejudice.

## I.  THERE IS NO PLAUSIBLE CLAIM FOR UNPAID OVERTIME/WAGES DUE TO OFF-THE-CLOCK WORK

### A.  Plaintiffs Do Not Identify a Single Week They Worked Overtime and Were Not Paid for That Work

Plaintiffs try to avoid dismissal of their unpaid overtime/wages claims by ignoring Second Circuit precedent and the authority cited in Defendants' motion to dismiss. Instead, they rely on a litany of cases that only strengthen the argument for dismissal by highlighting the absence in this case of the specificity *Lundy* and its progeny require.[1]

As an initial matter, Plaintiffs' opposition ignores, and therefore concedes, that Wills fails to identify a single week she worked overtime and did not receive proper compensation *despite the fact she already possesses her payroll information.* The very authority cited by Plaintiffs show that Wills has failed to state a claim for unpaid overtime. *See Gregory v. Stewart's Shops*

---

[1] The cases cited by Plaintiffs involve individuals who specifically alleged they worked 40 or more hours per week *every week of their employment and* were not paid overtime wages. Opp. at 3-4. Plaintiffs do not meet both of these requirements. Rather, Stewart concedes she was only "scheduled" to work over 40 hours from March 2022 to May 14, 2022. SAC ¶¶ 31, 32. But she does not identify a specific week during this two-month period when she worked overtime without receiving full compensation. As a result, her allegations mirror those the Second Circuit has found impermissibly vague. *Lundy v. Catholic Health Sys. Of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (requiring a plaintiff to allege a particular week when she worked over 40 hours and was denied overtime pay during that week).

*Corp.*, 2015 WL 893058, at *2-3 (N.D.N.Y. Mar. 2, 2015) (allegations that plaintiff "averaged" 15 minutes of unpaid work per day failed to state an overtime claim under the FLSA). Plaintiff Stewart fares no better. She tries to avoid dismissal of her individual claims by trading in the same generalities as Wills while identifying three weeks she worked over 40 hours. SAC ¶¶ 42, 45, 49, 51. But identifying three weeks she worked overtime, without anything more, is not enough to plead a plausible claim of unpaid overtime due to off-the-clock work.

Moreover, Stewart concedes that she does not allege how many hours of overtime she worked or whether she worked a morning shift during those three weeks. Opp. at 5. Instead, she simply repeats the allegation in the complaint that PCRs assigned to morning shifts allegedly work 15 minutes off the clock while waiting for their computers to load. SAC ¶ 42. However, based on the payroll records in her possession (and referenced in the complaint), it would be misleading for Stewart to allege that she was scheduled to work the morning shift every day during the three identified weeks. Nor does she. Given the absence of these allegations, the Court and Defendants are left to guess at the amount of unpaid overtime she allegedly worked during these three weeks. This is precisely the type of "speculative" pleading that the Second Circuit held to be impermissible under *Lundy*.

### B. Plaintiffs Concede They Cannot Identify a Common Policy to Support Their Class and Collective Off-the-Clock Claims

Plaintiffs' opposition also confirms that this is a case where it is "clear that the plaintiffs cannot possibly prove the [class or collective] claims." *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008). The reason is straightforward: Plaintiffs cannot point to *any* common policy resulting in off-the-clock work that is applicable to *every* PCR employed by Defendants in the state of New York over the past six years. Their class and collective claims fail accordingly. *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 631

3

(S.D.N.Y. 2007) (dismissing plaintiff's FLSA collective claims when "[t]here [wa]s no reference made to a policy to which other employees are subject, nor to any company policy at all").[2]

Instead of addressing this defect, Plaintiffs merely restate the allegations in their complaint and claim that waiting for a computer to load or becoming distracted by impatient clients at the start of a morning shift are somehow "policies" as matter of law. Opp. at 8. But they cite no authority in support of this position. That is because individualized work experiences, like waiting for a slow computer to load, are not a managerial directive or a "uniform policy" necessary to plausibly allege class and collective action claims. *See Beyer v. Michels Corp.*, 2022 WL 901524, at *8-9 (E.D. Wisc. Mar. 28, 2022) (striking plaintiff's FLSA class allegations where "[s]he has not alleged that there was a uniform policy (independent of what a single supervisor said or did) that applied to logging in early…").

It is clear from the face of the pleadings that the Plaintiffs have not and cannot allege the existence of a common policy resulting in off-the-clock work that is applicable to each and every PCR during the proposed class period. Nor do they have any response to the cases cited in Defendants' motion, which hold that Plaintiffs cannot plausibly allege class and collective causes action absent such a policy. As a result, their class and collective off-the-clock claims should be dismissed or stricken without leave to amend.

## II.   THERE IS NO PLAUSIBLE CLAIM FOR UNPAID OVERTIME/WAGES DUE TO "ONE-DIRECTIONAL" ROUNDING

Plaintiff Wills opposes dismissal of her "one-directional" rounding claims by repeating the allegations in her complaint and arguing that whether or not Defendants failed to compensate

---

[2] Plaintiffs try to distinguish *Zhong* by asserting that the decision turned on plaintiff's failure to allege facts regarding his purported collective action. Opp. at 8. But the Plaintiffs here similarly admit they only allege facts concerning 6 of the over 120 urgent care centers they seek to include in their purported class and collective. Opp. at 7; SAC, Ex. B. In any event, the *Zhong* court dismissed plaintiff's collective claims for failing to reference "any company policy at all." 498 F. Supp. 2d at 631. The same is true here.

4

her for any work actually performed is immaterial to stating her claim because one-directional rounding is "unlawful." Opp. at 8-11. Her argument is wrong and misleading.

"Rounding practices are not *per se* unlawful under the FLSA." *Vasquez v. Victor's Café 52nd Street, Inc.*, 2019 WL 4688698, at *3 (S.D.N.Y. Sept. 26, 2019) (internal citations omitted).[3] In fact, the very authority cited by Plaintiffs requires they plausibly allege that the purported rounding policy results in the "failure to compensate the employee[] properly for all the time *they have actually worked.*" Opp. at 9 (emphasis added). But Wills does not point to a single instance when she or any PCR was not compensated for work performed due to Defendants' purported timekeeping policy in its 2017 handbook. Instead, she makes several inaccurate statements about what is contained in this handbook—without attaching it—which are contradicted by the handbook citations in Defendants' motion. Mot. at 10. For example, nowhere does the handbook state that "employees will not be paid for time worked," as Plaintiffs contend (Opp. at 10). To the contrary, Defendants' handbook explicitly provides that employees "may never work off the clock and therefore may not begin work until start time." Mot. at 10. Numerous courts have recognized that this type of policy is lawful. *See, e.g., Creal v. Group O, Inc.*, 2016 WL 3181579, at *2 (N.D. Ill. June 8, 2016) (timekeeping policy that rounded early-clock-ins to scheduled start time but prohibited off-the-clock work is not facially unlawful because it would not result in uncompensated work); *Arthur v. Murphy Co.*, 2013 WL 12314684, at *2-6 (D. Or. Dec. 20 2013) (policy allowing employees to clock-in early "and remain free to use the time before and after a scheduled shift for their own purposes" is not unlawful).

In sum, any alleged rounding policy that provides a "grace period" for employees to

---

[3] The same principle applies to rounding claims brought under the NYLL. *See Gordon v. Kaleida Health*, 299 F.R.D. 380, 405 n.25 (W.D.N.Y. 2014).

clock in *before* they start working is not unlawful. Because Wills has failed to identify a single day she was not compensated for work actually performed due to any supposed rounding, her claim should be dismissed.

### III.   THERE IS NO PLAUSIBLE CLAIM FOR UNCOMPENSATED "SHORT BREAKS"

Plaintiffs concede they failed to allege that either Stewart, Wills, or any other PCR was authorized to take short breaks, or directed to clock out if they did so. Their opposition instead argues it is sufficient to simply claim that Defendants' PCRs *may* have at some point clocked out for a short break of their own volition. Opp. at 11-12; SAC ¶¶ 52, 53. This is far too speculative to satisfy the pleading standard under *Iqbal* and *Twombly*. Recognizing this deficiency, Plaintiffs rely entirely on the allegation that Stewart on a single occasion, during the course of her entire employment, clocked out for a short period of time during a shift. *Id*. But Plaintiffs do not allege Stewart was ever directed to clock out for short breaks or why she clocked out this one time. Even if they had, the *de minimis* nature of Stewart's allegation still fails to state a claim. *See Perez v. Wells Fargo and Co.*, 2015 WL 1887354, at *6 (N.D. Cal. Apr. 24, 2015) (holding employee's FLSA claim that he was not compensated for a single 10-minute break over a 3-year period fails to state a claim).

### IV.   THERE IS NO PLAUSIBLE CLAIM UNDER THE NEW YORK WAGE THEFT PREVENTION ACT

Plaintiffs argue that their Wage Theft Prevention Act ("WTPA") claims should not be dismissed because: (1) dismissal would prevent any individual from bringing similar claims, and (2) the majority of other courts in this Circuit would permit their claims to move forward. Opp. at 12-14. Both of these arguments should be rejected by this Court.

First, Plaintiffs concede they have not alleged an actual harm resulting from the purportedly "improper" wage notices and statements they received. Instead, they claim that they

6

allegedly "struggled to," but ultimately did, pay their bills on time. SAC ¶ 59. This fails to plead an injury in fact for the reasons addressed in Defendants' opening brief. Mot. at 13-14. The cases cited by Plaintiffs do not establish otherwise. For example, Plaintiffs rely on *Mateer v. Peloton Interactive, Inc.*, 2022 WL 2751871 (S.D.N.Y. July 14, 2022), which they claim involved "very similar" allegations. Opp. at 13-14. Not true. *Mateer* focused on sales and leasing agents compensated through a complex mixture of wages, bonuses, and incentive payments, as well as claims that the agent's employer frequently changed this mixture without any disclosures. The failure to disclose in *Mateer* prevented the agents from understanding how they were being compensated. *Mateer*, No. 22-cv-00740, ECF No. 33, ¶¶ 2, 81. The other case discussed by Plaintiffs, *Metcalf v. Transperfect Translations Int'l, Inc.*, is equally inapposite. 2022 WL 19300779, at *2 (S.D.N.Y. Nov. 15, 2022). There, the plaintiffs alleged they were reclassified from exempt to non-exempt (and thus eligible for overtime) without receiving any notice of the change in classification or of their new hourly and overtime rates, which resulted in them not being paid overtime wages for nine months. *Id.*[4]

Plaintiffs' WTPA claims are speculative and have nothing to do with these two cases. *See Shi v. TL & CG Inc.*, 2023 WL 5827598, at *3-4 (S.D.N.Y. Sept. 8, 2023) (finding *Mateer* and *Metcalf* inapposite to WTPA claims because "the consequences of Defendants' failure to provide proper wage notices are entirely speculative"). This is consistent with the Court's recent dismissal of similar allegations in *Neor v. Acacia Network, Inc.*, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023), as well as Judge Vyskocil's rejection of *the exact same allegations* in

---

[4] Plaintiffs also cite *Thompson v. Elev8 Center N.Y., LLC*, 2023 WL 4556045 (S.D.N.Y. July 17, 2023) and *Lipstein v. 20x Hospitality*, 2023 WL 6124048 (S.D.N.Y. Sept. 19, 2023). Neither is applicable to this case. Defendants in *Thompson* opposed plaintiffs' WTPA claims by submitting copies of the challenged statements to argue there was no WTPA violation in the first place, but they never argued that plaintiffs lacked standing. *Thompson,* 20-cv-09581, ECF 90 at 19. And the plaintiffs in *Lipstein* alleged they were never provided any wage notices or wage statements, thereby making it impossible to determine that they were being underpaid, which caused them to miss rent payments. 2023 WL 6124048, at *3-4. No such circumstances exist here.

7

*Munoz v. Grp. US Mgmt. LLC*, 2023 WL 5390204, at *6 (S.D.N.Y. Aug. 22, 2023).

Second, courts in this Circuit have overwhelmingly rejected Plaintiffs' argument that a technical violation of the WTPA coupled with a speculative injury establishes standing. As shown below, just within the past five weeks, at least six New York federal courts have dismissed WTPA claims for lack of standing:

- *Esquivel v. Lima Rest. Corp.*, 2023 WL 6338666, at *11 (E.D.N.Y. Sept. 29, 2023) (denying default judgement on WTPA claims, and instead dismissing them, where plaintiffs failed to allege the failure to provide wage notices or statements "resulted in an injury greater than Defendants' minimum wage, overtime, and spread-of-hours wage violations").

- *Cartagena v. Sixth Ave. W. Assocs. LLC*, 2023 WL 6318170, at *2 (S.D.N.Y. Sept. 28, 2023) (holding that "throwaway" allegations that a failure to provide wage notices and/or statements cause "financial injury, informational harm, etc." fail to establish Article III standing).

- *Jackson v. ProAmpac LLC*, 2023 WL 6215324, at *4 (S.D.N.Y. Sept. 25, 2023) ("Although Plaintiffs specifically allege the inaccurate notices delayed Plaintiffs' ability to enforce their legal rights (and therein prevent or prosecute the alleged wage theft), these harms do not show an interest in using the information beyond bringing [this] lawsuit") (internal quotations omitted).

- *Sokolovsky v. Silver Lake Specialized Care Ctr.*, 2023 WL 5977298, at *11 (E.D.N.Y. Sept. 14, 2023) (dismissing WTPA claims where plaintiffs failed to allege an injury in fact resulting from an alleged failure to provide wage statements).

- *Echevarria v. ABC Corp.*, 2023 WL 5880417, at *6-7 (E.D.N.Y. Sept. 11, 2023) (dismissing WTPA claims instead of granting a default judgment because plaintiff failed to allege a concrete harm).

- *Marvici v. Roche Facilities Maint. LLC*, 2023 WL 5810500, at *8-9 (S.D.N.Y. Sept. 8, 2023) (dismissing WTPA claims because the "allegations fail[ed] to demonstrate how the lack of accurate wage notices and statements led to either a tangible injury or something akin to a traditional cause of action").

The above decisions establish the following takeaway: "[i]n the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream

8

consequences of the recordkeeping violation." *Marvici*, 2023 WL 5810500, at *9. Plaintiffs' WTPA claims suffer from the same defect and should be dismissed for lack of standing.

## V.     THERE IS NO PLAUSIBLE CLAIM OF DISCRIMINATION BASED ON RACE

Defendants' opening brief demonstrated that Stewart's discrimination claim must fail because she does not (and cannot) allege she was treated differently than similarly-situated individuals of a different race. Stewart tries to sidestep this requirement by claiming—without any authority—that these well-established pleading requirements only apply to claims of "complex salary discrimination," and that, in her case, discriminatory intent must be inferred from facially-neutral comments. Opp. at 19-20.[5] Neither argument passes muster.

**1.**    Stewart concedes she fails to allege *any* information about *any* similarly situated employee outside her protected group who purportedly received preferable scheduling. This is fatal to her claim. *See* Mot. at 15-17. Recognizing this fact, Stewart's opposition incorrectly asserts that "it is wholly unnecessary, at least on the instant motion, to consider the details of other employees' unique situations." Opp. at 20. She does not cite any authority for this proposition, which is not surprising because the opposite is true. *See Jones-Cruz v. Rivera*, 2021 WL 965036, at *10 (S.D.N.Y. March 14, 2021) (dismissing a NYCHRL claim based on unfavorable scheduling where "the Complaint merely asserts – in a conclusory fashion – that Defendant [] favored White physician assistants").

Instead of identifying similarly-situated employees as is required to make a reasonable

---

[5] Stewart also argues that her claim should move forward because the Third Circuit once held that unfavorable scheduling *may* support a claim of discrimination. Opp. at 21. However, courts in this district recognize that "[a] less desirable work schedule, without more," does not support such a claim. *Jones-Cruz*, 2021 WL 965036, at *8. The "more" required is evidence that the change in scheduling resulted in a loss of income, a change of responsibilities, or the like. *Id.*; *see also Petyan v. N.Y.C. Law Dep't,* 2015 WL 1855961, at *10 (S.D.N.Y. Apr. 23, 2015) adopted by 2015 WL 4104841 (S.D.N.Y. July 2, 2015) ("Where the change in schedule does not occasion a reduction in wages or job responsibilities, unfavorable schedules are a 'mere inconvenience' and not an adverse employment action."). Stewart does not and cannot allege any such extraordinary circumstances here.

inference of discriminatory intent, Stewart speculates there is "no reason to think Defendants might have some complex, non-race-related reason" for not changing the schedules of other employees at the last minute. Opp. at 20. But this type of conclusory speculation is precisely why courts require comparator information. There are a myriad of non-discriminatory reasons why different groups of employees, with different roles, levels of experience, and responsibilities, do not share the same scheduling practices.

      **2.**     Stewart also argues that, in this case, a nefarious intent should be inferred from facially-neutral comments even if courts typically refuse to do so. Opp. at 17. Lacking any authority to support this position, Stewart mischaracterizes *Ndongo v. Bank of China Ltd.*, claiming it holds that facially neutral comments only maintain their neutral status where a complaint "offers absolutely no information regarding the context of those remarks." (Opp. at 21). The decision says no such thing. In *Ndongo*, the plaintiff alleged that (1) her manager called her "abnormal" during a meeting in response to her complaints about the manager's workplace conduct, and (2) the term "abnormal" was a "clearly racist code word used by Defendants to make black and African American people feel as if they don't belong at [Bank of China] due to their race." 2023 WL 2215261, at *6 (S.D.N.Y. Feb. 24, 2023). The *Ndongo* court disagreed and dismissed the race discrimination claim, concluding that plaintiff's allegations, standing alone, failed to "justify an inference that [these] facially neutral comments were actually related to [her] protected characteristics." *Id*. The same result is warranted here.

## **CONCLUSION**

     For all the reasons set forth herein and in Defendants' opening brief, the Court should grant the motion to dismiss this case with prejudice.

Dated:  October 13, 2023

Respectfully submitted,

/s/ Jeremy M. White
Jeremy M. White (admitted *pro hac vice*)
David A. Beach
McDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, DC 20001
Tel: (202) 756-8000
jmwhite@mwe.com
dbeach@mwe.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 13th day of October 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

                                                      */s/ Jeremy White*
                                                     Jeremy White