UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DESHANEE STEWART and
SEVARIA WILLS, on behalf of
themselves, FLSA Collective Plaintiffs,
and the Class,

       Plaintiffs,

– against –

SUMMIT HEALTH MANAGEMENT,
LLC, d/b/a CITYMD, and CITY
PRACTICE GROUP OF NEW YORK
LLC, d/b/a CITYMD,

       Defendants.

**OPINION & ORDER**

23-cv-04073 (ER)

RAMOS, D.J.:

  Deshanee Stewart and Sevaria Wills bring this putative class action against Summit Health Management, LLC. d/b/a CityMD, and City Practice Group of New York, LLC (collectively, "Summit"). d/b/a CityMD.  Plaintiffs allege that Summit violated the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") by failing to compensate them for the number of hours they worked and discrimination against them on the basis of race.  Summit is moving to dismiss the claims alleging (1) uncompensated off-the-clock work, (2) uncompensated short breaks, (3) non-neutral rounding, (4) failure to provide proper wage notices and statements, and (5) employment discrimination.  Doc. 31.  For the reasons set forth below, Summit's motion is GRANTED in part and DENIED in part.

I.  BACKGROUND

 A. Statement of Facts

  Plaintiffs bring this class action on behalf of all current and former patient care and service representatives ("PCRs") employed by Summit in New York State on or after the date six years before the Plaintiffs' first Complaint was filed on May 16, 2023 (the

"Class"). *See* Second Amended Complaint ¶ 15, ECF No. 29 ("SAC"). Summit Health and City Practice Group of New York are foreign limited liability companies. SAC ¶¶ 11, 12. In 2019, Summit Health merged with City Practice Group of New York. *Id.* ¶ 10. Summit owns and manages over 30 CityMD urgent care facilities throughout New York City. *Id.* ¶¶ 9, 10. Summit's principal place of business is located at 150 Floral Avenue, New Providence, NJ. *Id.* ¶¶ 11, 12.

Plaintiff Wills was hired by Summit as a PCR in August 2015. *Id.* ¶ 34. She worked primarily at Summit's 69th Street and Broadway location and would occasionally cover work shifts at four other Summit facilities in New York City, located at 315 West 57th Steet, 2398 Broadway, 944 2nd Avenue, and 37 West 23rd Street. *Id.* ¶¶ 9, 34. For the duration of her employment, Wills was scheduled to work four days per week, for a total of forty-eight hours. *Id.* ¶ 36. Summit terminated Wills' employment in October 2018. *Id.* ¶ 34.

Wills would sometimes arrive at work, clock-in, and begin working before her scheduled start time. *Id.* ¶¶ 38, 54. At the time, she believed she was being compensated for all of the time she worked. *Id.* ¶ 54. However, she alleges that Summit had a policy of not paying for time worked between early check-ins and scheduled start times. *Id.* ¶¶ 38, 54. Summit's April 2017 Handbook contains a statement that "payments begin[] at scheduled starting time unless approved by manager… " *Id.* ¶ 39. Plaintiffs allege that, like Wills, other PCRs employed by Summit before May 2019 also suffered violations from this "one-directional rounding." *Id.* ¶¶ 39, 54.[1]

Plaintiff Stewart was hired by Summit as a PCR in August 2021. *Id.* ¶ 29. She worked primarily at Summit' 1500 Lexington Avenue location and would occasionally cover work shifts at their 336 East 86th Street, 1150 3rd Avenue, and 3556 Broadway locations in New York City. *Id.* ¶ 29. From the start of her employment until

---

[1] Plaintiffs allege that in May of 2019, Summit revised its Handbook, including the revision of this policy and the removal of this provision. SAC ¶ 39.

2

approximately March 2022, Stewart was scheduled to work four days per week, for a total of thirty-eight hours. *Id.* ¶ 31. From approximately March 2022 until the end of her employment, she was scheduled to work forty-two hours per week. *Id.* ¶ 3. Summit terminated Stewart's employment on May 14, 2022. *Id.* ¶ 29.

Stewart and Wills both allege that Summit had a company-wide policy where they and other PCRs clocked-in for work through a desktop computer application. *Id.* ¶ 41. Each night, Summit required that these computers be shut down. *Id.* In the mornings, PCRs would have to reboot the computer, a process that took no less than 5 minutes. *Id.* ¶ 42. At times, PCRs were required to assist patients before the computers were rebooted. *Id.* This would result in approximately 15 minutes of uncompensated work. *Id.* ¶ 44. They were also required to clock-out at the end of their shifts. *Id.* ¶ 48. But once PCRs logged out at the end of their scheduled shifts, they could not clock back in. *Id.* According to the SAC, approximately twice a week, PCRs would have to continue to assist patients after clocking out at the end of their shift, even though they could not log back in. *Id.* ¶¶ 48, 49. This resulted in an additional 10-15 minutes of uncompensated work. *Id.* ¶ 49.

Additionally, PCRs would sometimes clock-out during their scheduled shift for short breaks of less than 20 minutes. *Id.* ¶ 52. Summit would not compensate them for this time. *Id.* As an example, Stewart alleges a failure to compensate for such a short break during the week of October 9, 2021. *Id.* ¶ 53.

At the beginning of employment and annually thereafter, Summit failed to provide Plaintiffs with proper wage notices or statements, as required by the NYLL. *Id.* ¶ 56. These notices protect Plaintiff's interests in ensuring proper, timely pay, apprising employees of their rights and of their employer's obligations. *Id.* ¶ 57. Without the notices, defendants were able to hide their alleged wrongdoing necessitating the current litigation, delaying payments, and causing Plaintiffs to struggle to timely pay bills. *Id.* ¶¶ 58, 59

In March 2022, Stewart began working under Manager Sueda. *Id.* ¶ 62. At the time, Stewart was one of two Black employees—both women—working at the Lexington Avenue location. *Id.* ¶ 63. Stewart alleges that Sueda, a white man, would repeatedly change her schedule—and that of the other Black employee—on short notice. *Id.* ¶¶ 62, 64. These last-minute shift alterations would make it so that Stewart could not make plans for the week with any certainty. *Id.* ¶ 64. Sueda would not make last-minute changes to the schedules of non-Black employees at that location, nor were such changes made by any other managers at that location. *Id.* ¶¶ 64, 65. When Stewart and the other Black employee attempted to discuss these schedule changes, Sueda called them "passive-aggressive" and "uncooperative." *Id.* ¶ 66. This treatment continued until Stewart was terminated on May 14, 2022. *Id.* ¶ 68.

### B. Procedural Background

Plaintiffs filed the instant action on behalf of the Class on May 16, 2023. Doc. 1. On June 16, 2023, Summit submitted a letter to the Court requesting permission to file a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). Doc. 13. In response, on June 23, 2023, Plaintiffs submitted a letter to the Court informing it of their intention to amend the Complaint. Doc. 18. The Court granted Plaintiff's application to amend the Complaint, and on July 21, 2023, Plaintiffs filed their First Amended Complaint ("FAC"). Docs. 20, 23. On August 03, 2023, Summit submitted a second letter to the Court again requesting permission to file a motion to dismiss. Doc. 25. On August 15, 2023, the Court held a pre-motion conference, and at this conference, granted Plaintiffs' motion for leave to amend the FAC. The Court also entered a scheduling order on Summit's anticipated motion to dismiss SAC. On August 25, 2023, Plaintiffs filed the SAC, Doc. 20, and on September 15, 2023, Summit moved to dismiss the SAC for failure to plead sufficient facts to support their claims for (1) uncompensated off-the-clock work due to pre- and post-shift time-shaving, (2) uncompensated short breaks, (3) non-neutral rounding, (4) failure to provide proper wage notices and statements, and (5) employment

discrimination.  Doc.31 at 4, 19.  Claims for uncompensated off-the-clock work, uncompensated short breaks, and improper wage notices and statements are brought on behalf of the entire Class.  SAC ¶¶ 12, 20.  Claims for non-neutral rounding are brought only on behalf of Wills and a subclass of PCRs hired before May of 2019 ("Subclass").  *Id.* ¶ 2.  Claims for employment discrimination are brought only on behalf of Stewart. *Id.*

## II.     LEGAL STANDARD

### A.  Rule 12(b)(6) Motion to Dismiss

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also id.* at 681, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 551, 127 S.Ct. 1955).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Id.* at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting

5

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)) (internal quotation marks omitted). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of the plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

Furthermore, "only a complaint that states a plausible claim for relief survives a motion to dismiss" and "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

### III.  DISCUSSION

#### A. Unpaid Overtime Claims Under the FLSA and the NYLL

Summit contends that the wage-and-hour claims based on allegations of uncompensated off-the clock work, including pre- and post-shift work and short breaks, must be dismissed for failure to plead with sufficient specificity. Doc. 31 at 4,11.

"The level of specificity required to state a cognizable claim for unpaid overtime was set out in *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013) and its progeny." *See DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 89-90 (2d Cir.2013); *Nakahata v. New York–Presbyterian Healthcare Sys.*, Inc., 723 F.3d 192, 200-01 (2d Cir.2013). Specifically, "[t]he Second Circuit announced ... that, 'to state a plausible [ ] overtime claim," a plaintiff need only "sufficiently allege '40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.' " *Herrera v. Comme des Garcons*, Ltd., 84 F.4th 110, 117 (2d Cir. 2023) (quoting *Lundy*,

6

711 F.3d at 114; *Dejesus*, 726 F.3d at 88); *see also Burns v. Haven Manor Health Care Ctr.*, LLC, 13 Civ. 5610, 2015 WL 1034881, at *2 (E.D.N.Y. Mar. 10, 2015)

Moreover, "plaintiffs are not required to keep careful records and plead their hours with mathematical precision…" *Bustillos v. Academy Bus*, LLC, No. 13 Civ. 565 (AJN), 2014 WL 116012, at *3 (S.D.N.Y. January 13, 2014).  In analyzing *Lundy* and its progeny, the Second Circuit recently held that the "pleading standard is unmet if all that plaintiffs allege is that at some undefined period in their employment, they worked more than forty hours in a single week."  *Herrera*, 84 F.4th at 117; *see also DeJesus*, 726 F.3d at 87 (rejecting plaintiff's bare allegations of under compensation when working in excess of forty hours during "some or all weeks" of her employment and explaining that *Lundy*'s requirement that a plaintiff "allege overtime without compensation in a 'given' workweek…" was "designed to require plaintiffs to provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'") (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).  The Second Circuit held in *Herrera* that "[s]uch an allegation would be far too vague and unhelpful for putting a defendant on notice of the alleged violation." *Herrera*, 84 F.4th at 117.  "The pleading standard is satisfied… if plaintiffs allege that their regularly scheduled workweek for a given period of time included more than forty hours of work, so that they were eligible for overtime during every week in which they worked their regular schedule."  *Id.*  In such an instance, all plaintiffs need allege is the period of time they were employed while working that regular schedule.  *See id.*

1. *Pre- and Post-Shift Time-Shaving*

Stewart alleges that from approximately March 2022 until the end of her employment, she was scheduled to work forty-two hours per week.  SAC ¶ 31.  She further alleges that she was required to continue assisting patients after clocking-out at the end of her shift.  *Id.* ¶ 48.  This uncompensated work occurred "approximately twice a week" for an additional 10-15 minutes each time.  *Id.* ¶ 49.  These claims suffice to "carry

7

the Plaintiffs over the forty-hour bar and permit us to infer that they were entitled to overtime pursuant to the FLSA." *Herrera*, 84 F.4th at 115.

The same is true for Wills. The Complaint alleges that for the duration of her employment, she was scheduled to work four days per week, for a total of forty-eight hours. SAC. ¶ 36. Allegations that she was also subject to the same uncompensated, post-shift work—"twice a week" for "10-15 minutes a day"—is sufficient to plausibly state her claim. *Id.* ¶ 49; *See Herrera*, 84 F.4th at 115; *see also Isayeva v. Diamond Braces*, No. 22 CIV. 4575 (KPF), 2024 WL 1053349, at *7 (S.D.N.Y. Mar. 11, 2024).

2. *Short Breaks*

Although Stewart and Wills have alleged regularly working over 40 hours a week for specific periods of time, Wills fails to allege facts showing that she regularly took uncompensated short breaks during those periods. SAC ¶¶ 31, 36. In fact, she fails to allege that she took any short breaks at all. SAC. The complaint alleges only that "[w]hen employees would clock-out for short breaks of less than 20 minutes, Summit failed to compensate this time." SAC ¶ 52. This conclusory statement is equivalent to the "in some or all workweeks" language that has been deemed insufficient to plausibly state a claim for relief in this Circuit. *Herrera*, 84 F.4th at 114 (quoting *Dejesus*, 726 F.3d at 90). Plaintiff Stewart, in contrast, alleges that during the week of October 9, 2021, Summit "fail[ed] to compensate [her] for a short break lasting less than of 20 minutes during a week she is recorded as working over 42 hours." SAC ¶ 53. This allegation is sufficiently specific to state an overtime compensation claim pursuant to the FLSA. *Herrera*, 84 F.4th at 115.

Accordingly, the motion to dismiss is DENIED as to Stewart and Wills' pre- and post-timing-shaving claim as well as Stewart's claim for uncompensated short breaks. The motion to dismiss is GRANTED as to Will's claim for uncompensated short breaks.

### B. Unlawful Rounding Under the FLSA and NYLL

Wills asserts that she and the Subclass were undercompensated as a result of Summit's purported policy of one-directional rounding. Doc. 31 at 9.

"Rounding practices are not per se unlawful under the FLSA." *Canelas v. World Pizza, Inc.*, No. 14 Civ. 7748 (ER), 2017 WL 1233998, at *10 (S.D.N.Y. Mar. 31, 2017) (internal quotation marks omitted). "Although no New York statute or regulation addresses the permissibility of rounding policies, New York's Department of Labor generally follows the FLSA and related regulations." *Id.* (internal quotation marks omitted). Under § 785.48(b) of the Code of Federal Regulations, rounding practices to the nearest quarter hour are tolerated because, presumably, such rounding "averages out so that the employees are fully compensated for all the time they actually work." 29 C.F.R. § 785.48(b). "In contrast, rounding policies have been held to violate § 785.48(b) where they favor the employer and systematically undercompensate employees." *Boone v. PrimeFlight Aviation Servs.*, Inc., No. 15 Civ. 6077 (JMA) (ARL), 2018 WL 1189338, at *7 (E.D.N.Y. Feb. 20, 2018).

Wills alleges that prior to 2019, Summit had a policy pursuant to which PCRs who clocked-in before their scheduled start time had their official start time rounded up to the time they were actually scheduled to start, irrespective of how much earlier they had clocked-in and began working. SAC ¶¶ 28, 54. In contrast, if PCRs clocked-in after the scheduled start time, their official start time was determined to be the time they actually clocked-in. *Id.* Wills points to both her personal experience and to Summit's April 2017 time-keeping policy for support. The policy states that "payments begin[] at scheduled starting time unless approved by manager..."[2] *Id.* ¶ 39.

Summit contends that other parts of its policy establish that "PCRs are paid for all time worked, may not work off the clock, and must immediately report any time keeping

---

[2] It is alleged that this policy was revised and deleted from the Handbook in May 2019. SAC ¶ 53. Stewart's employment began in August 2021, and therefore she is ineligible to be a member of the Subclass. *Id.* ¶ 29.

9

errors to management." Doc. 31 at 10.  But Summit's contention that their official time-keeping policy undermine plaintiffs' allegations is irrelevant at this juncture.  All that is required now is for plaintiffs to sufficiently allege a policy that "favor[s] the employer and systematically undercompensate[s] employees." *Boone v. PrimeFlight Aviation Servs.*, Inc., No. 15 Civ. 6077 (JMA) (ARL), 2018 WL 1189338, at *7 (E.D.N.Y. Feb. 20, 2018); *see also Neor v. Acacia Network, Inc.*, No. 22-cv-4814 (ER), 2023 WL 1797267, at *3 (S.D.N.Y. Feb. 7, 2023) (holding that plaintiffs had been undercompensated by Acacia's detrimental rounding policy when they sufficiently demonstrated how that policy would result in a loss of wages owed); *see also* SAC ¶¶ 28, 54.  Here, Plaintiffs have satisfactorily done that.  Consequently, Defendant's motion to dismiss the claim of undercompensated work due to one-directional rounding is DENIED.

### C.  Leave to Amend

Summit asserts that Plaintiff's claims relating to short breaks and one-directional rounding should be dismissed because they were not raised in the pre-motion conference and are being pleaded without seeking leave from the Court.  Doc. 31 at 9.  "District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." *Palm Beach Strategic Income, LP v. Salzman*, 457 Fed. Appx. 40, 43 (2d Cir.2012) (citing cases).  At the August 15, 2023, pre-motion conference, Plaintiffs discussed amending the FAC, which included allegations of "unpaid wages, including overtime wages, due to a policy of compelling uncompensated off-the-clock work." Doc. 23 ¶ 1.  In particularly, Plaintiffs discussed omitting the theory regarding delayed payments and possibly amending others.  The Court granted Plaintiffs leave to amend the FAC to do so.  Both short breaks and one-directional rounding are ways in which Plaintiffs now allege they were not paid due to a policy of uncompensated off-the-clock work.  Therefore, Plaintiffs' claims are within the Court's August 15, 2023, grant for leave to amend.

### D. Standing Under the New York Wage Theft Prevention Act ("WTPA")

Plaintiffs allege a violation of the New York Wage Theft Prevention Act ("WTPA") in count II of the SAC. *Id.* ¶ 92, 93. Specifically, they allege that Defendants knowingly and willingly failed to provide proper wage notices and statements as required under the NYLL. *Id.* Summit contends that Plaintiffs do not have standing to pursue the claim because they fail to allege an injury in fact suffered by purportedly not receiving proper wage notices and statements. Doc. 31 at 12.

Section 195(1) of the WTPA requires employers to provide employees with a notice at the time of hiring containing "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other. NYLL § 195(1)(a). Similarly, § 195(3) requires employers to provide employees with certain wage information "with every payment of wages." NYLL § 195(3). Employers who fail to comply with these provisions may be liable for damages. *See* NYLL § 198(1-b) (damages for failure to comply with Section 195(1)); NYLL § 198(1-d) (damages for failure to comply with Section 195(3)).

"Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *See Pastrana v. Mr. Taco LLC*, No. 18-cv-9374 (GBD), 2022 WL 16857111, at *7 (S.D.N.Y. Sept. 23, 2022), report and recommendation adopted, No. 18-cv-9374 (GBD), 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). To demonstrate an injury in fact, a plaintiff "must show the invasion of a (1) legally protected interest that is (2) concrete and (3) particularized and (4) actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016)). "A 'bare' statutory violation is insufficient to confer constitutional standing absent some 'concrete' harm." *Id.* (citing *Spokeo, Inc v. Robins*, 578 U.S. at 341, 136 S.Ct. 1540); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 141 S. Ct.

11

2190, 2205, 210 L.Ed.2d 568 (2021) ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."). While a so-called "informational injury" (i.e., failure to receive required information) can give rise to standing, *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021), the plaintiff must allege "downstream consequences" from failing to receive that information that show an interest in using the information "beyond bringing [this] lawsuit," *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (first quoting *TransUnion*, 141 S. Ct. at 2214, then *Laufer v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022)).

The facts alleged here are almost identical to those in *Munoz v. Grp. US Mgmt. LLC*, No. 1:22-cv-04038 (MKV), 2023 WL 5390204 (S.D.N.Y. Aug. 22, 2023). In *Munoz*, the court found no Article III standing where plaintiffs failed to allege an injury-in-fact connected to defendants' failure to provide statutory notices pursuant to the NYLL. *Id.* at 6. As in *Munoz*, Plaintiffs here allege that "Defendants failed to provide Plaintiffs with proper wage notices or statements." SAC ¶ 56. But like in *Munoz*, "these vague allegations [still] do not demonstrate how [Summit's] 'lack of notice resulted in an injury greater than Defendants' ... overtime ... violations.'" *Munoz* at *6 (quoting *Pastrana v. Mr. Taco LLC*, No. 18-cv-09374, 2022 WL 16857111, at *7 (S.D.N.Y. Sept. 23, 2022) (emphasis added), *R&R adopted*, No. 18-cv-9374, 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022). Further, Plaintiffs allegations that Defendant's actions "delayed payment" and "caused [them] to struggle to timely pay bills," [still] fails to "link[ ] [this] injury-in-fact to Defendants' failure to provide statutory notices under the NYLL." SAC ¶¶ 58, 59; *Wang v. XBB, Inc.*, No. 18-cv-7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022). Therefore, Defendant's motion to dismiss Plaintiff's wage and notice claim pursuant to the WTPA is GRANTED.

### E. Disparate Treatment Pursuant to NYSHRL and NYCHRL

Summit argues that Stewart has not sufficiently plead a plausible claim of disparate treatment based on race pursuant to the NYSHRL or the NYCHRL.

In 2019, New York State amended NYSHRL so that it—like its NYCHRL analogue—should be applied "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed." N.Y. Exec. L. § 300; *see McHenry v. Fox News Network*, LLC, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020). Courts within this District have interpreted the amendment "to render the standard for claims closer to the standard of the NYCHRL." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); *see also Oliver v. City of New York*, No. 19-cv-11219, 2023 WL 2160062, at *19 n.8 (S.D.N.Y. Feb. 22, 2023). Whether this amendment makes the NYSHRL's standard identical to that of the NYCHRL—or merely closer to it, however, has not yet been definitively resolved. *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 552 (S.D.N.Y. 2023).

#### 1. NYSHRL

A plaintiff for an employment discrimination claim pursuant to the NYSHRL "is not required to plead a *prima facie* case under *McDonnell Douglas*…" to prevail against a motion to dismiss. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *see also Forkin v. Local 804 Union (IBT)*, 394 F. Supp. 3d 287, 307 (E.D.N.Y. 2019). Instead, a plaintiff must "plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87; accord *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020). A plaintiff may do this by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.*

To allege an adverse employment action for purposes of a discrimination claim, a plaintiff must plead facts demonstrating that she suffered "a materially adverse change in the terms and conditions of employment." *Morgan v. NYS Attorney General's Office*, No. 11 CIV. 9389 (PKC) (JLC), 2013 WL 491525, at *5 (S.D.N.Y. Feb. 8, 2013) (quoting *Galabya v. New York City Board of Education*, 202 F.3d 636, 640 (2d Cir. 2000)). "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Galabya*, 202 F.3d at 640). "Examples of materially adverse employment actions include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.'" *Morales v. Div. of Youth & Fam Just.*, No. 14-cv-7253 (JGK), 2019 WL 3430168, at *4 (S.D.N.Y. July 30, 2019) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).

Here, Stewart points to her (1) termination, (2) being described as "uncooperative" and "passive-aggressive" when she objected to said schedule changes, and (3) repeated, last-minute schedule changes, as ways in which she suffered employment discrimination at the hands of Summit. SAC ¶ 75. The first alleged adverse action, "termination of employment," could suffice as a materially adverse employment action. *Morales v. Div. of Youth & Fam. Just.*, No. 14-cv-7253 (JGK), 2019 WL 3430168, at *4 (S.D.N.Y. July 30, 2019). However—as Summit points out—the complaint fails to allege facts supporting a connection between Stewart's termination and her race as a determining factor in it. *See Vega*, 801 F.3d at 87; accord *Farmer v. Shake Shack Enterprises*, LLC, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020). Allegations that another Black employee—who faced similar schedule changes and descriptions—was also fired—for an undisclosed reason—does not suffice to bridge the gap. SAC ¶¶ 66, 67.

Similarly, Plaintiff's allegations that descriptions of her being 'uncooperative' or 'passive aggressive' in response to workplace complaints are "facially neutral

14

comments," not "racist code word[s]," and therefore do not constitute a materially adverse action or plausibly raise an inference of discrimination. *See Ndongo v. Bank of China Ltd.*, 2023 WL 2215261, at *6 (S.D.N.Y. Feb. 24, 2023); *see Williams v. Victoria's Secret*, 2017 WL 384787, at *8 (S.D.N.Y. Jan. 27, 2017).

Allegations that Stewart suffered repeated last-minute schedule changes may also demonstrate a "change in working conditions… more disruptive than a mere inconvenience" sufficient to constitute an adverse employment action. *Galabya,* 202 F.3d at 640.  In response, Summit identifies cases where a change in shift or employment location were found to be inadequate to constitute a materially adverse change. *See Albuja v. Nat'l Broad. Co. Universal*, 851 F.Supp.2d 599, 608 (S.D.N.Y. 2012); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406–07 (S.D.N.Y. 2014); *Petyan v. New York City L. Dep't*, No. 14-CV-1434 GBD JLC, 2015 WL 1855961, at *10 (S.D.N.Y. Apr. 23, 2015), report and recommendation adopted, No. 14 CIV. 1434 GBD JLC, 2015 WL 4104841 (S.D.N.Y. July 2, 2015) (quoting *Smalls v. Allstate Ins. Co.*, 396 F.Supp.2d 364, 370 (S.D.N.Y. 2005) ("A less desirable work schedule, without more, does not constitute a materially adverse change in the terms and conditions of employment.").  However, unlike an unfavorable schedule change or a one-time-only shift of work hours or employment location, to have one's schedule repeatedly changed at the last-minute hinders one's ability to plan and establish consistency in their life.  It is no "mere inconvenience." *Galabya*, 202 F.3d at 640.

Moreover, Stewart alleges that Sueda, a white man, only made repeated last-minute changes to her schedule and the schedule of the only other Black employee working at that location.  SAC ¶ 64.  By contrast, she alleges that Sueda did not make last-minute changes to the schedules of any of the non-Black employees.  *Id.*  These facts sufficiently "giv[e] rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87; accord *Farmer v. Shake Shack Enterprises*, LLC, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020).

15

*2. NYCHRL*

Given that Stewart has adequately pleaded her NYSHRL Claim, her NYCHRL claim necessarily survives the motion to dismiss. *See Shake Shack*, 473 F. Supp. 3d at 327 ("Because [plaintiff] has adequately pled sex-discrimination claims under Title VII and the NYSHRL, her similar claim under the broader NYCHRL also necessarily survives."); *see also Johnson v. Everyrealm*, Inc., 657 F. Supp. 3d 535, 552 (S.D.N.Y. 2023). Accordingly, Summit's motion to dismiss Wills' NYSHRL and NYCHRL discrimination claims are DENIED.

### IV. CONCLUSION

For the foregoing reasons, the motion is GRANTED in part and DENIED in part. The parties are directed to appear for a conference on August 9, 2024, at 11:00 AM before the Honorable Edgardo Ramos in Courtroom 619 of the United States Courthouse, 40 Foley Square, New York, NY 10007.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 30.

It is SO ORDERED.

Dated:   07/01/2024
         New York, New York

                                                  _____
                                                  EDGARDO RAMOS, U.S.D.J.